UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THERESA DEROUSSE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:11CV2164 JCH |
| ) | |
| GEICO GENERAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant GEICO General Insurance Company's Motion for Partial Summary Judgment, filed April 12, 2012. (ECF No. 14). Plaintiff has not responded to the motion.

## BACKGROUND

On or about November 18, 2009, Plaintiff Theresa DeRousse was driving her 2002 Chrysler PT Cruiser eastbound on Missouri Route 30 in Jefferson County, Missouri. (Petition (hereinafter "Complaint" or "Compl."), ¶ 5). That same day, non-party Pamela Martin was driving a 2003 Chevrolet Venture Minivan westbound on Missouri Route 30. (Id., ¶ 6). According to Plaintiff, Ms. Martin negligently caused her vehicle to collide with Plaintiff's vehicle, causing serious physical injury to Plaintiff. (Id., ¶¶ 7-10).

Plaintiff settled her claims for negligence against Ms. Martin for $25,000, the policy limits of Martin's plan with her insurance carrier, All State. (Compl., ¶ 13). Plaintiff maintains she suffered damages well in excess of $25,000, however. (Id., ¶ 14).

In Count I of her Complaint, removed to this Court from the Circuit Court of Jefferson County, Missouri on December 13, 2011, Plaintiff alleges that on or about November 18, 2009, she had a contract for insurance with Defendant. (Compl., ¶ 16). Plaintiff claims the policy covered her

2002 Chrysler PT Cruiser and two other vehicles, and allowed for underinsured policy limits of $100,000 for each vehicle. (Id., ¶¶ 18-20). Plaintiff thus maintains that under "Missouri stacking law," her policy with Defendant allowed for underinsured motorist protection totaling $300,000. (Id., ¶¶ 21-22).[1] Count II of Plaintiff's Complaint charges vexatious refusal to pay on the part of Defendant. (Id., ¶¶ 26-40).

As stated above, Defendant filed the instant Motion for Partial Summary Judgment on April 12, 2012, asserting Plaintiff's claim that she is entitled to stacked coverage is contrary to the unambiguous terms of Defendant's policy and Missouri law. (Defendant's Motion for Partial Summary Judgment, P. 2).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

---

[1] According to Defendant, Plaintiff made a claim against it for underinsured motorist coverage, and in the course of negotiating said claim, demanded that Defendant pay $250,000 to settle the claim. (Defendant's Motion for Partial Summary Judgment, P. 1).

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.'" Ballard v. State Farm Mut. Auto. Ins. Co., 2012 WL 1085489 at *2 (E.D. Mo. Mar. 30, 2012), quoting Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo., 992 S.W.2d 308, 313 (Mo. App. 1999).

> Because Missouri does not mandate underinsured motorist coverage, whether underinsured motorist benefits can be stacked is determined by the contract entered between the insured and the insurer. This means that if the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable. If, however, policy language is ambiguous [as to stacking], it must be construed against the insurer, and stacking will be allowed.

Id. (internal quotation marks and citations omitted). See also Taylor v. State Farm Mut. Auto. Ins. Co., 2012 WL 538960 (Mo. App. Feb. 21, 2012) (same).

Plaintiff's policy with Defendant provided for underinsured motorist coverage in relevant part as follows:

> LOSSES WE PAY
> We will also pay damages the ***insured*** is legally entitled to recover for ***bodily injury*** caused by an accident and arising out of the ownership, maintenance

- 3 -

or use of an *underinsured motor vehicle*[2]. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements....

LIMIT OF LIABILITY
Regardless of the number of:
    (a)    *Insured autos* involved in the accident;
    (b)    Persons covered;
    (c)    Claims made;
    (d)    Vehicles or premiums shown in the declarations; or
    (e)    Premiums paid:

1.    The limit of liability for Underinsured Motorist Coverage stated in the declarations as applicable to "each person"[3] is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident....

4.    In no event will we pay more than the limits shown in the declaration for this coverage. If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss. The most we will pay an *insured* for *bodily injury* is the limit of liability reduced by all sums:

    (a)    Paid because of the *bodily injury* by or on behalf of the persons or organizations who may be legally responsible;
    (b)    Paid or payable under the Bodily Injury, Medical Payments, or Uninsured Motorist Coverages of the policy; or
    (c)    Paid or payable under any disability benefits law or any similar law.

(GEICO Automobile Policy Amendment, Underinsured Motorist Coverage, ECF No. 16-3, P. 25).

Defendant contends the above-quoted language unambiguously limits Plaintiff's recovery to $100,000. (Defendant's Memorandum in Support of its Motion for Partial Summary Judgment, P.

---

[2] With certain exceptions not relevant here, the policy defines "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." (GEICO Automobile Policy Amendment, Underinsured Motorist Coverage, ECF No. 16-3, P. 24).

[3] The limit of liability for Underinsured Motorist Coverage stated in the declarations as applicable to "each person" is $100,000. (GEICO Family Automobile Policy Renewal Declarations, ECF No. 16-3, P. 4).

7). As noted above, the policy states that the most Defendant will pay is the limit of liability for Underinsured Motorist Coverage stated in the declarations for "each person", which is $100,000. Further, the policy provides that this limit applies regardless of the number of vehicles or premiums shown in the declarations.

A recent Missouri Court of Appeals case supports Defendant's contention. In O'Rourke v. Esurance Ins. Co., 325 S.W.3d 395 (Mo. App. 2010), the plaintiff's policy had extremely similar language to that of Plaintiff's here. See O'Rourke, 325 S.W.3d at 397. The Missouri Court found that the policy unambiguously prevented stacking the coverage provided for two insured vehicles, only one of which was involved in the accident. Id. at 398.

Upon consideration, the Court finds the same logic applies here. In other words, while the policy at issue covers three automobiles, only one was involved in the accident, and the policy "unambiguously prevent[s] stacking the coverage provided for the [three] insured vehicles." O'Rourke, 325 S.W.3d at 398. Defendant's Motion for Partial Summary Judgment must therefore be granted. Accord Rodriguez v. General Acc. Ins. Co. of America, 808 S.W.2d 379 (Mo. banc 1991).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (ECF No. 14) is **GRANTED**.

Dated this  30th  day of May, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE